FREDERICK A. GILLIS, JR. *v.* STATE OF MARYLAND

[No. 135, September Term, 1979.]

\* \* \*

ALICE STEVENSON *v.* STATE OF MARYLAND

[No. 582, September Term, 1979.]

*Decided December 6, 1979.*

The cause was argued before MORTON, MOYLAN and MASON, JJ.

*Stanley S. Cohen* for appellants.

*Stephen Rosenbaum, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *John Denholm, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant Frederick A. Gillis, Jr. was convicted by a

Baltimore City jury of possession of heroin. Upon this appeal, he raises four contentions:

1. That he was subjected to a massive campaign of police and prosecutorial abuse;
2. That he was denied his constitutional right to a speedy trial;
3. That the trial judge erroneously failed to disqualify himself, and
4. That the court erred in not suppressing physical evidence.

It will only be necessary for us to address the speedy trial issue.

The appellant Alice Ruth Stevenson was also convicted of possession of heroin with intent to distribute and with the maintaining of a common nuisance. Both in terms of the original criminal activity and the procedural history of the prosecution, the case of Alice Ruth Stevenson was clearly auxiliary to that against Frederick J. Gillis, Jr. Her appellate fortunes will rise or fall with his.

The criminal activity charged against both appellants occurred on February 11, 1977. They were both arrested in the course of the same raid and the time clock with respect to both began running on that date. On December 1, 1977, ten months later, both appellants filed a Motion for Speedy Trial. On January 25, 1978, the appellant Gillis filed a Motion to Dismiss for Lack of Speedy Trial. With respect to both appellants, a hearing on their various pretrial motions was conducted between August 16 and August 21, 1978. The motions were denied and the trials leading to their convictions now under review were held.

At the outset, we note the passage of 18 months between arrest and trial is of constitutional dimension and, therefore, is enough to trigger analysis of the four-factored test of *Barker v. Wingo*, 407 US 514.

The first factor to be considered is simply the arithmetical running of the time clock, unburdened by any value judgments as to why it ran or what resulted from its running.

In the special world of speedy trial analysis, the time period of 18 months is significant but not remarkable. It is not so minimal as to skew the remaining analysis according to the other three factors in favor of the State; nor is it so inordinately excessive as to skew analysis of the remaining factors in favor of the appellants. It is simply not the pivotal factor in this case.

The second factor of "demand-waiver" tilts distinctly in favor of the appellants. They each demanded a speedy trial almost nine months before they received that trial. When the demands for speedy trials came, some ten and one-half months had already elapsed since the prosecutions began. As of December 1, 1977, the State was put upon definite notice to move forward expeditiously. Cognizant of the many logistical burdens that face a busy and overworked prosecutor's office, we are not condemning a "business as usual" approach during ordinary times. We are simply reminding the State that once the "red alert" has been sounded, it is incumbent to react with a greater sense of urgency. The pace of activity between December, 1977 and August, 1978, which might not have been inappropriate one year earlier in the running of this particular calendar and which might not have been inappropriate if the demand for speedy trial had never been made, became significantly less appropriate after the State was alerted to be at "battle stations."

The prejudice factor is not remarkable in either direction. Alice Ruth Stevenson was free on bail one day after her arrest. The appellant Frederick J. Gillis, Jr. was incarcerated for one month following his arrest but does not claim that this was a product of undue delay or that the State was derelict for not bringing him to trial within 30 days of his arrest. Nothing was shown one way or the other with respect to pretrial anxiety and nothing was shown with respect to the impact of the delay upon the defense of the case. The appellants were content to rely, as they may, upon the presumption of prejudice arising out of the very delay itself. Although this does not give as much weight to this factor as demonstrated prejudice might, it is enough to tilt the scales

mildly in favor of the appellants. This is so particularly when the State fails to rebut the presumptive prejudice in any way or to diminish its impact.

In our judgment, the pivotal factor against the State in this case is that of "fault" or "reason for delay". Even here, we narrow the focus. On two occasions between February, 1977 and November, 1977, the case was set for trial and was postponed at the request of the defense, because defense counsel was ill. Any delay, therefore, within this first nine months is chargeable exclusively to the defense. A trial date was finally set for November 18, 1977. Even though all delay prior to that point is legitimately chargeable to the defense, it does not mean that we begin our reckoning as if November, 1977 were still February, 1977. The earlier delay, though chargeable to the defense, nonetheless, injects an additional sense of urgency in the proceedings after November, 1977 that would not be present if the case were a new one. The very age of the case at that point militates toward having a "fast track" available for "intensive care" or "special problem" cases.

An additional dimension is present in this case as we assess the reason for delay between November, 1977 and August, 1978. A surface level of analysis would ascribe some of the subsequent delay to the procedural tactics of the defense. An analysis in fuller context, however, reveals that much of the procedural "traffic jam" arose out of the massive barrage of charges brought by the State against the appellant Gillis. We are not prepared to say that the charges were brought in bad faith for the charges were lodged by appropriate charging authorities — either the State's Attorney by way of criminal information or the Grand Jury by way of indictment. Nor are we prepared to say that the numerous search and seizure warrants executed against Gillis were obtained or executed in bad faith, for each was issued upon a finding of probable cause by a neutral and detached judicial figure. Nonetheless, the very massiveness of the investigative and prosecutorial bombardment generated untold procedural and logistical problems for the defense.

There is a suggestion in the record that the State was interested in using Gillis as a source of information or as a

State's witness in the highly publicized proceedings against Colonel Watkins of the Police Department. Gillis apparently did not render the cooperation which was sought. Regardless of the reason, Gillis was subject to intense and frequent confrontation with the police throughout 1975, 1976, and 1977. The upshot was that both appellants filed, on November 18, 1977, a Motion to Dismiss for Police and Prosecutorial Misconduct and Persecution. The State obtained a continuance in order to answer that motion. The trial of the appellants, therefore, could not go forward on November 18, 1977.

Without becoming unnecessarily immersed in the tangled skein of Gillis's many involvements with the law, we note a few highlights. On December 29, 1975, two criminal informations were filed against him. On December 15, 1976, he was found not guilty on both charges by Judge J. Harold Grady in the Criminal Court of Baltimore. Within 24 hours four indictments were handed down charging, inter alia, the appellant and the appellant's mother with conspiracy to violate the narcotics laws. The conspiracy went to the same date and incident as did the substantive charges on which the appellant had been found not guilty the day before. Six months later, all of these indictments were nol-prossed. These indictments were still hanging over the appellant's head at the time when charges now under review were brought. During the approximately two-year period from November, 1975 through January, 1978, no less than 19 search warrants were executed upon the appellant Gillis, his mother and his girlfriend. Six of these executions of search warrants occurred while the present charges were pending. Two additional indictments, charging the distribution of heroin and conspiracy to violate the narcotics laws on July 29, 1976, were handed down on December 15, 1976. They were pending against the appellant throughout the pendency of the present charges and were not nol-prossed until March, 1979. On October 18, 1977, another criminal information was filed against the appellant, charging him with possession with intent to distribute heroin on September 17, 1977. That case was ultimately tried on October 6, 1978, and the appellant was

found not guilty. A companion case to the present case, charging conspiracy to violate the narcotics laws, did not go to trial with the present case and was ultimately nol-prossed in 1979.

When the present case could not be tried on November 18, 1977, the appellants filed their demand for a speedy trial on December 1, 1977. Five days later, Gillis was indicted on two new charges of assault with intent to murder, the crimes having allegedly occurred on October 31, 1977. After Gillis filed his motion to dismiss the present indictment because of the alleged denial of his right to a speedy trial, as of January 25, 1978, the prosecution indicated to the court that it was electing to proceed on the assault with intent to murder indictments before going forward with the present charges.

On March 13, 1978, the appellant Gillis filed in the new case a motion similar to the one he had filed in this case — a Motion to Dismiss for Police and Prosecutorial Misconduct and Persecution. At the trial date set for the assault with intent to murder case on April 7, 1978, it developed that the motion had not been answered and no hearing on it had been held. As a result, the trial was postponed. A trial date was reset for June 28, 1978. On June 28, the appellant Gillis objected, quite properly, to the fact that no hearing had been held on his motion to dismiss. The trial judge also unexpectedly announced that the present case would be tried before the assault case. The appellant on that day had to request postponement because, not anticipating the narcotics trial as opposed to the assault with intent to murder trial, he needed to get his witnesses in. A hearing date for the motion to dismiss in this case was then set for August 16, 1978.

The assault with intent to murder charges were at a later date nol-prossed.

In the last months before this case came to trial, three new charges were lodged against Gillis. On June 23, 1978, he was indicted for robbery. A month later the charge was nol-prossed. On June 26, 1978, a criminal information was filed charging him with the possession of heroin with intent to distribute. That information was ultimately nol-prossed. On July 10, 1978, an indictment was handed down charging

Gillis with assault with intent to murder. That indictment was ultimately nol-prossed.

Nine months elapsed between appellants' demand for a speedy trial and the trial itself. This delay was attributable to the filing of the new assault with intent to murder charges against Gillis and the decision to proceed first to trial on those charges. The failure to afford a hearing on the motion to dismiss aborted a scheduled trial on those charges. A second scheduled trial on those charges was aborted when the court overruled the prosecutor's decision and determined to try these charges first. Additional months elapsed because a hearing had not yet been held on the motion to dismiss. Tactical decisions within the prosecutor's office and equivocation by the court were the reasons these appellants did not get an earlier trial. The obvious source of confusion and equivocation was the multiplicity of charges against Gillis at various stages along the assembly line.

In the last analysis, the reason for the last nine months of delay lies at the feet of the State. The period of delay was significant. Prejudice is presumed. An appropriate demand had been made by the appellants. Balancing all of the factors, we conclude that their rights under the Sixth Amendment to a speedy trial were violated.

*Judgments reversed; costs to be paid by the Mayor and City Council of Baltimore.*